Clyde Arthur TENNEY and Ardith Mae Tenney, as Co-Guardians for Steven Clyde Tenney, Plaintiffs-Appellants,

v.

Carl FLAXER; Eugene Schulman; Frank S. Potestio; and Mercy Medical Center, Defendants-Appellees.

No. 86SA14.

Supreme Court of Colorado,
En Banc.

Nov. 10, 1986.

Rehearings Denied Dec. 2, 1986.

Roath & Brega, P.C., Robert E. Kendig, Denver, for plaintiffs-appellants.

Hall & Evans, Eugene O. Daniels, Alan Epstein, Denver, for defendants-appellees Carl Flaxer & Eugene Schulman.

Pryor, Carney & Johnson, Susan T. Smith, Friedrick C. Haines, Peter W. Pryor, Edward D. Bronfin, Denver, for defendant-appellee Frank S. Potestio.

Long & Jaudon, P.C., Joseph C. Jaudon, Robert M. Baldwin, Denver, for defendant-appellee Mercy Medical Center.

QUINN, Chief Justice.

Pursuant to Rule 21.1 of the Colorado Appellate Rules, the United States Court of Appeals for the Tenth Circuit has certified the following three questions of Colorado law which may be determinative of an appeal presently pending in that court:

1. Under the 1977 amendments to the Colorado medical negligence statute of limitations, Section 13–80–105, [6] C.R.S. [1985 Supp.], is this action barred where brought by a ... mentally incompetent person [who was fifteen years old in 1977] [1] and on his behalf by co-guardians, alleging negligence by medical practitioners and a hospital in July and August 1962, which action was not commenced

---

1. Question one as certified asked whether the action was barred "where brought by a fifteen-year old mentally incompetent person." The claimant, however, is now twenty-four years old and was fifteen in 1977. We have accordingly rephrased the question in the interest of clarity.

within one year after the effective date of the said 1977 amendments to the medical negligence statute of limitations?

2. Was the running of the medical negligence statute of limitations, Section 13–80–105, [6] C.R.S. [1985 Supp.], tolled in this case, thereby rendering plaintiffs' action timely on the theory that mental incompetence caused by defendants' negligent conduct tolled the statute of limitations for an action based on that conduct?

3. Did the third clause of the [first] sentence of subsection [2][2] of the medical negligence statute of limitations, Section 13–80–105, [6] C.R.S. [1985 Supp.], which provides that "if there is a discovered act or omission which could give rise to an action, the limitations period shall not run unless a guardian ad litem is appointed to represent the minor child," toll the running of the medical negligence statute of limitations in this case until the appointment of Steven Clyde Tenney's parents as his co-guardians, thereby rendering plaintiffs' action timely?

We agreed to respond to the certified questions and now answer question one in the negative, and question two in the affirmative. Our answers to these questions render it unnecessary to respond to question three.

## I.

The plaintiffs-appellants, Clyde Arthur Tenney and Ardith Mae Tenney, are the parents of Steven Clyde Tenney, who was born on August 10, 1962, at Mercy Medical Center in Denver, Colorado. Steven's parents were appointed his legal co-guardians on September 8, 1980. On August 10,

1982, Steven's parents, as co-guardians on behalf of Steven, filed a diversity action in the United States District Court for the District of Colorado. Alleging that the plaintiffs were citizens and residents of the state of Washington and that the defendants were citizens and residents of the state of Colorado, the complaint sought money damages against the defendants-appellees, Carl Flaxer, Eugene Schulman, Frank S. Potestio, and Mercy Medical Center, for injuries caused to Steven as the result of the defendants' negligence in connection with the treatment administered to Steven's mother during the late stages of her pregnancy in July and August 1962 and during Steven's birth on August 10, 1962. The complaint alleged that as a direct and proximate result of the negligence of the individual defendants Steven was born with severe and permanent brain damage and has suffered total and permanent disability since birth.

The district court granted the defendants' motions for summary judgment, ruling that the action was barred by the Colorado medical malpractice statute of limitations, § 13–80–105, 6 C.R.S. (1985 Supp.). The plaintiff appealed to the United States Court of Appeals for the Tenth Circuit, which thereafter certified the three questions to this court.

## II.

### A.

Section 13–80–105, 6 C.R.S. (1985 Supp.), the version of the medical malpractice statute of limitations under which we decide the questions before us, was enacted in the form herein discussed in 1977.[3] Under sec-

2. The third question incorrectly refers to "the third clause of the second sentence" of subsection (2) when in fact the pertinent statutory language is found in the third clause of the *first* sentence of subsection (2). The third question also refers to subsection (b)(2) of section 13–80–105, [6] C.R.S. [1985 Supp.], but the correct citation is subsection (2) of section 13–80–105.

3. Section 13–80–105, 6 C.R.S. (1985 Supp.), states:

(1) **Actions barred in two years.** No person shall be permitted to maintain an action [for medical malpractice] ... unless such action is instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury. In no event may such action be instituted more than three years after the act or omission which gave rise thereto, subject to the following exceptions:

tion 13–80–105(1), a claim for medical malpractice in Colorado must be filed within two years "after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury." The statute also contains a repose provision which, subject to specified exceptions, states that "[i]n no event may such action be instituted more than three years after the act or omission which gave rise" to the injury. § 13–80–105(1). The three-year repose provision does not apply in cases of knowing concealment of the act or omission, or of leaving an unauthorized foreign object in the body, or in the case of a minor who was under six years old at the time of injury. § 13–80–105(1)(a), (b). In the case of an injury to a child under six, an action may be brought on his behalf within two years of his sixth birthday. § 13–80–105(1)(b).

In addition to the above exceptions to the repose provision, section 13–80–105(2) provides for the tolling of the periods of limitation and repose in the case of a minor under eighteen who has no natural or legal guardian; such a claim must be filed within two years after a legal guardian has been appointed, or within two years after the minor reaches eighteen, whichever first occurs. Section 13–80–105(3) states that for purposes of the limitation and repose periods of the statute a person under disability includes a "mental incompetent." [4]

(a) If the act or omission which gave rise to the cause of action was knowingly concealed by the person committing such act or omission, or, if such act or omission consisted of leaving an unauthorized foreign object in the body of the patient, then such action may be instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the act or omission;

(b) If the action is brought by or in behalf of a minor who was under six years of age on the date of occurrence of the act or omission for which such action is brought, then such action may be instituted within two years after said minor reaches six years of age.

(2) The limitations period provided for in subsection (1) of this section shall not run during any period when the said minor is under the age of eighteen years and has no natural or legal guardian, but such action may be instituted by or in behalf of said minor within two years after a legal guardian is appointed by a court of record or within two years after the person under such disability reaches eighteen years of age, whichever shall occur first; except that, if there is a discovered act or omission which could give rise to an action, the limitations period shall not run unless a guardian ad litem is appointed to represent the minor child. Any real party in interest may apply to the court for the appointment of such guardian ad litem. A real party in interest shall include the party against whom such an action may be brought.

(3) For purposes of this section only, "person under disability" means a minor under six years of age, a person under the age of eighteen years who does not have a natural or legal guardian, a mental incompetent, or a person under any other legal disability.

In 1986, the General Assembly repealed section 13–80–105, 6 C.R.S. (1985 Supp.), and enacted a new statute of limitations, which provides that all actions against any hospital, doctor, or other person involved in the healing arts shall be commenced within two years after the cause of action accrues. Ch. 114, sec. 1, § 13–80–102, 1986 Colo.Sess.Laws. 695, 696. The new statute of limitations further provides as follows:

Section 23. **Effective date—applicability.** (1) This act shall take effect July 1, 1986, and shall apply to claims for relief arising on or after said date.

(2)(a) Except as provided in paragraph (b) of this subsection (2), all actions commenced on or after July 1, 1986, to assert claims for relief arising prior to July 1, 1986, which are not barred by the statutory provisions amended by this act as said provisions existed prior to July 1, 1986, or by any other applicable statute of limitations shall be commenced on or before July 1, 1988.

(b) All actions commenced on or after July 1, 1986, to assert claims for relief arising prior to July 1, 1986, which are not barred by the statutory provisions amended by this act as said provisions existed prior to July 1, 1986, or by any other applicable statute of limitations shall be commenced on or before July 1, 1989, if the statutory provisions amended by this act provide a three-year statute of limitations or on or before July 1, 1992, if the statutory provisions amended by this act provide a six-year statute of limitations.

Ch. 114, sec. 23, 1986 Colo.Sess.Laws. 695, 706. We, of course, answer the questions certified to us on the basis of the pre-1986 statutory scheme and express no opinion as to the effect of the 1986 revisions.

4. The sole reference to mental incompetency in section 13–80–105, 6 C.R.S. (1985 Supp.), is in subsection (3), which defines a "person under disability" as "a minor under six years of age, a person under the age of eighteen years who

Before 1977 a minor entitled to bring an action for medical malpractice had until two years after he reached the age of majority to file his claim. *See* § 13–80–116, 6 C.R.S. (1973). Since Steven was only fifteen years of age in 1977, his claim was still viable under the pre–1977 statutory scheme. In 1977 the General Assembly amended the medical malpractice statute by including, among other revisions, a special section which stated that all causes of action existing on the effective date of the statute, July 1, 1977, would not be barred until one year after that date, or until the expiration of the limitations period, whichever was longer. *See* ch. 198, sec. 5, 1977 Colo.Sess.Laws 816, 818.

### B.

The United States District Court interpreted section 13–80–105(1)(b), 6 C.R.S. (1985 Supp.), which states that any claim on behalf of a minor under six years on the date of the act or omission must be filed within two years after the minor reaches six years of age, as applicable to any claim on behalf of a minor who had either a natural or legal guardian irrespective of the existence of any other disability, such as mental incompetency. It was the district court's view that:

> [W]hether a minor under six years of age has a disability or doesn't have a disability ... simply does not make any difference because the statute very clearly

does not have a natural or legal guardian, a *mental incompetent,* or a person under any other legal disability" (emphasis added). The only other place in the statute where the word "disability" occurs is in subsection (2), where it is used to refer specifically to persons under eighteen who have no natural or legal guardian.

**5.** Section 13–81–103(1), 6 C.R.S. (1973), provides in relevant part:

> **Statute begins to run—when.** (1) When in any of the statutes of the state of Colorado a limitation is fixed upon the time within which a right of action, right of redemption, or any other right may be asserted either affirmatively or by way of defense, or an action, suit, or proceeding based thereon may be brought, commenced, maintained, or prosecuted, and the true owner of said right is a person under disability at the time such right accrues, then:

says if the action is brought by or on behalf of a minor who is under six years of age on the date of occurrence of the act or omission for which the action is brought, then such action may be instituted within two years after said minor reaches six years of age.... The natural or legal guardian has the obligation to bring the action within two years of the minor reaching six years of age, or because of the change in the statutory language, one year after July 1, 1977.

Because in the present case the action was not filed by Steven's parents before Steven's eighth birthday or within one year of July 1, 1977, the district court concluded that his claim was barred.

The district court's resolution of the matter, however, does not take into account that Steven, in addition to having been a minor one year after July 1, 1977, was at all times since his birth a mental incompetent. If mental incompetency, not minority, is viewed as Steven's disability for the purposes of the statute of limitations, then Steven's claim was not time-barred. While section 13–80–105(3), 6 C.R.S. (1985 Supp.), includes a mental incompetent within the definition of a person under disability, it does not specifically address the effect of such incompetency on the limitation and repose periods applicable to medical malpractice claims. Section 13–81–103(1)(a), 6 C.R.S. (1973), does address this question,[5]

> (a) If such person under disability is represented by a legal representative at the time the right accrues, or if a legal representative is appointed for such person under disability at any time after the right accrues and prior to the termination of such disability, the applicable statute of limitations shall run against such person under disability in the same manner, for the same period, and with the same effect as it runs against persons not under disability. Such legal representative, or his successor in trust, in any event shall be allowed not less than two years after his appointment within which to take action on behalf of such person under disability, even though the two-year period expires after the expiration of the period fixed by the applicable statute of limitations;
>
> \* \* \* \* \* \*
>
> (c) If the disability of any person is terminated before the expiration of the period of

and, as we recently held in *Southard v. Miles,* 714 P.2d 891 (Colo.1986), this section establishes an indefinite toll for a "person under a disability" by reason of mental incompetency.[6]

■ In *Southard,* suit had been brought against three physicians and a hospital by the parents of a twenty-five-year-old man who had sustained irreversible brain damage, allegedly as a result of the defendants' negligence. Since the action was filed over three years after the date of the injury, the defendants argued that the claim was barred under section 13–80–105. We disagreed, concluding that if plaintiff Southard were found on remand to be under a disability sufficient to invoke the general tolling provisions of section 13–81–103(1)(a), his claim would not be barred,

limitation in paragraph (a) of this subsection (1), and no legal representative has been appointed for him, then such person shall be allowed to take action within the period fixed by the applicable statute of limitations, or within two years after the removal of the disability, whichever period expires the later.
The definition of a "person under disability" in section 13–81–101(3), 6 C.R.S. (1973), was amended by the General Assembly in 1986. The amended version retains a "mental incompetent" under the definition of a "person under disability." Ch. 114, sec. 3, § 13–81–101(3), 1986 Colo.Sess.Laws 695, 702.

**6.** We discussed in *Southard,* 714 P.2d at 897, the reasons why section 13–81–103(1)(a), 6 C.R.S. (1973), creates a statutory toll to the two-year statute of limitations in section 13–80–105(1), 6 C.R.S. (1985 Supp.), when the claimant is mentally incompetent:

Although section 13–81–103(1)(a) speaks in terms of the running of the applicable statute of limitations against a person under disability represented by a "legal representative," and not in terms of suspending or tolling the limitation period during the period of disability, there can be no question that the statute is intended to toll the applicable statute of limitations during the period of disability. Otherwise there would be no purpose in setting forth the conditions for removing the disability, as section 13–81–103 clearly does. The provisions of section 13–81–103, therefore, operate to suspend the running of the applicable statute of limitations until either the disability is removed or, as expressly provided in subsection (1)(a), a "legal representative" is appointed for the "person under disability." *See Public Service Co. of Colorado v. Barnhill,* 690 P.2d 1248 (Colo.1984); *Antonopoulos v. Tellu-*

since that provision also applied to the limitations period for medical malpractice claims:

[Section 13–81–103] is intended to apply to any statute of limitations in this state, § 13–81–101(1), 6 C.R.S. (1973), unless there exists a special statute pertinent to the claim that conflicts with the general provisions of section 13–81–103. No such conflict exists here, as section 13–80–105 is totally silent on the effect of mental incompetency on the two-year period of limitation and the three-year period of repose applicable to medical malpractice claims.

714 P.2d at 897. In the case of a claim of a mental incompetent for injury sustained as a result of medical malpractice, therefore,

*ride,* 187 Colo. 392, 532 P.2d 346 (1975); *Price v. Sommermeyer,* 41 Colo.App. 147, 584 P.2d 1220(197[8]), *rff'd,* 198 Colo. 548, 603 P.2d 135 (1979). A "person under disability" is defined in section 13–81–101(3), 6 C.R.S. (1985 Supp.), to include a "mental incompetent," thus duplicating in this respect the definition of a "person under disability" in section 13–80–105(3) of the medical malpractice statute of limitations and repose. A "legal representative" is a "guardian, conservator, executor, or administrator duly appointed by a court having jurisdiction of any person under disability or his estate." § 13–81–101(2), 6 C.R.S. (1973).
We also elaborated on the reasons why the statutory toll of section 13–81–103(1)(a) applies equally to the three-year period of repose in section 13–80–105(1):

We are also satisfied that the tolling provisions of section 13–81–103(1)(a) with respect to claims by or on behalf of a "person under disability" apply equally to the three-year period of repose applicable to a medical malpractice claim. Section 13–81–103(1)(a) is plainly directed to any statute that fixes a limitation "upon the time within which a right of action ... or any other right may be asserted either affirmatively or by way of defense." This all-encompassing language clearly applies to a statutory period of repose, which, by definition, limits the time within which a cause of action must be instituted regardless of whether the cause of action has yet accrued. *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822, 825 (1983). When the language of a statute is plain and its meaning clear, it should be interpreted as written. *Civil Service Employees Association v. Love,* 167 Colo. 436, 448 P.2d 624 (1968).

714 P.2d at 897–98.

the tolling period created by section 13–81–103(1)(a) continues until the mental incompetency is removed or a "legal representative" is appointed, in which event the action must be filed within two years of such appointment. Section 13–81–101(2), 6 C.R.S. (1973), defines a "legal representative" to include a "guardian . . . appointed by a court having jurisdiction of any person under disability," but does not include a natural parent not so appointed.

## C.

The defendants-appellees would distinguish *Southard* on the basis that Douglas Southard became mentally incompetent as an adult, while Steven Tenney had been so since birth. The parents of one whose mental incompetency arises from birth injuries, it is argued, would surely have discovered the injury by the time the child reached the age of six, and would have brought an action on his behalf out of a sense of responsibility for their child. Thus, the argument concludes, unlike a mentally incompetent adult who may have no one to look out for his rights until a legal representative is appointed, a mentally incompetent child who has natural parents does not need the additional protection provided by applying the general tolling provisions of section 13–81–103(1)(a) to the medical malpractice statute of limitations.

Such argument flies in the face of the plain language of the applicable statutes. Nowhere in these statutes is there any indication that the disability of mental incompetency is available only to adults. Section 13–81–101(3) includes a "mental incompetent" within the definition of "person under disability" with no qualifying or limiting language accompanying the former phrase. Section 13–80–105(3), 6 C.R.S. (1985 Supp.), limits the "disability" of minority to minors under six or to minors under eighteen with no natural or legal guardian, but no such limitation is placed on the disability of mental incompetency.

If the General Assembly had intended to limit medical malpractice actions brought by minors regardless of whether the minors were under any other disability, it could have made that intention clear, as have the legislatures of several other states. For example, Indiana's medical malpractice limitation period for minors is similar to Colorado's but goes on to state:

> [E]xcept that a minor under the full age of six (6) years shall have until his eighth birthday in which to file. *This section applies to all persons regardless of minority or other legal disability.*

Ind.Code Ann. § 16–9.5–3–1 (Burns 1983) (emphasis added). Similar provisions can be found in other states. *See* N.M.Stat. Ann. § 41–5–13 (1978) (three-year medical malpractice statute of limitations, with tolling provision giving minors under six until their ninth birthday in which to file, applies to all persons regardless of minority or other legal disability); Ohio Rev.Code Ann. § 2305.11(B) (Page 1985 Supp.) (four-year medical malpractice limitation period applies to all persons regardless of legal disability, except that minors under ten have until their fourteenth birthday to file); Texas Rev.Civ.Stat.Ann., art. 4590i, § 10.01 (Vernon 1986) (two-year medical malpractice limitation period, allowing minors under twelve until their fourteenth birthday in which to file, applies to all persons regardless of minority or other legal disability); Utah Code Ann. § 78–14–4(2) (1986 Supp.) (two-year limitation provision and four-year repose provision for medical malpractice claims apply to all persons, regardless of minority or other legal disability); Wyo.Stat. § 1–3–107 (1977) (two-year limitation period, with provisions allowing actions to be brought until a minor's eighth birthday and until one year after the removal of a legal disability, applies to all persons regardless of minority or other legal disability). Since the Colorado legislature did not choose to make the periods of limitation and repose in section 13–80–105, 6 C.R.S. (1985 Supp.), unqualifiedly applicable to all claims filed on behalf of minors, regardless of the existence of a separate

and independent disability such as mental incompetency, we decline to do so here.[7]

■ We thus hold that the general tolling provisions of section 13–81–103(1)(a), 6 C.R.S. (1973), apply to a medical malpractice claim brought on behalf of a mentally incompetent person whether that person is a minor or an adult. Under section 13–81–103(1)(a), a legal representative appointed for the person under disability is allowed a period of two years after appointment within which to take action on behalf of the person under disability. Here, Steven's parents were appointed co-guardians on September 8, 1980, and the suit was filed on August 10, 1982, a date within- two years after their appointment.

### III.

We accordingly answer certified questions one and two as follows: (1) the 1977 amendments to the Colorado medical malpractice statute of limitations, § 13–80–105, 6 C.R.S. (1985 Supp.), did not bar this action, notwithstanding the fact that the action was not commenced within one year after the effective date of the 1977 amendments; and (2) the statutory periods of limitation and repose in section 13–80–105, 6 C.R.S. (1985 Supp.), were tolled in this case by reason of Steven Tenney's mental incompetency until such time as his parents were appointed as co-guardians on September 8, 1980.

■ We find it unnecessary to answer question three—that is, whether the provisions of section 13–80–105(2), 6 C.R.S. (1985 Supp.), which state that "the limitations period shall not run unless a guardian ad litem is appointed to represent the minor child," tolled the statute of limitations until the appointment of Steven Tenney's parents as co-guardians. Our reason for declining to answer question three is that section 13–81–103(1), 6 C.R.S. (1973), establishes mental incompetency as an independent basis to toll the periods of limitation and repose applicable to a medical malpractice claim, and that this statutory toll continues until a legal representative is appointed, in which event the action must be filed within two years following the appointment. Since the instant claim was filed within two years following the appointment of Steven's parents as co-guardians, we need not consider whether the statutory language of section 13–80–105(2), 6 C.R.S. (1985 Supp.), provided a separate basis to toll the periods of limitation and repose. in section 13–80–105(1), 6 C.R.S. (1985 Supp.).

The action filed by the Tenneys was not time-barred under Colorado law.

ROVIRA, J., dissents.

ROVIRA, Justice, dissenting:

I respectfully dissent. The majority's reading of the involved statutes renders sections 13–80–105(1)(b) and (2), 6 C.R.S. (1985 Supp.), either meaningless or redundant; as such I cannot join in its opinion.

The facts of the case and pertinent statutory language are given in the majority opinion, so they need not be restated here.

Section 13–80–105 breaks down into five elements: first, a general statute of limitations of two years for medical malpractice claims and a three year statute of repose. Section 13–80–105(1) [105(1)]. Second, an exception to the repose provision for cases involving concealment and foreign objects left in the body. Section 13–80–105(1)(a). Third, an exception to the repose provision for a cause of action that accrues to a minor under six years of age. Section 13–80–105(1)(b) [105(1)(b)]. Fourth, a tolling provision for the limitations period in 105(1) for a minor under eighteen years of age with no natural or legal guardian. Section 13–80–105(2) [105(2)]. Fifth, a definition

---

7. Even though the question submitted to us asks whether the action is timely "on the theory that mental incompetence caused by defendants' negligent conduct toll[s] the statute," we emphasize that our affirmative answer to this question should not be read as implying that a different result would be reached if plaintiff Steven Tenney's mental incompetence had been caused by something other than the alleged negligence of the defendants. Mental incompetence tolls the statute as set forth here regardless of its origin.

of "person under disability." Section 13–80–105(3) [105(3)].

This last element—the disability definition—implicitly refers to section 13–81–103, 6 C.R.S. (1985 Supp.) [103], which provides for the effect of a disability on "any" of the statutes of limitations of the State of Colorado. In *Southard v. Miles*, 714 P.2d 891 (Colo.1986), we held that when 103 applies, it tolls the statute of limitations for so long as the disability continues, and is also applicable to the three year period of repose.

## I.

It is undisputed that at the time plaintiff's cause of action arose, at his birth in 1962, the then existing medical malpractice statute of limitations allowed him until his birthday in 1985 to file this suit. *See* C.R.S. 1963, 87–1–6 and 87–1–7; these provisions were recodified at § 13–80–116, 6 C.R.S. (1973). Certified question 1 inquires into the interaction between the 1977 amendments to the statute, Ch. 198, 1977 Colo.Sess.Laws 816–18, and plaintiff's status as a 15-year-old mental incompetent.

Two provisions of the 1977 amendments are pertinent to this question. The first is the one-year "grace period," which provided that the new statute of limitations would become effective on July 1, 1977, "except that all causes of action which are existing on the effective date of this act shall not be barred until one year after the effective date of this act or until the expiration of the period of limitations, whichever is longer." Ch. 198, sec. 5, 1977 Colo.Sess. Laws 816, 818. Since plaintiff's cause of action was still viable on July 1, 1977, he had one year or the statutory period (as amended) to file, whichever was longer.

The second provision that is pertinent to certified question 1 provides, "[a] claim for injury shall be considered to accrue on the date the injury is known or should have been known by the exercise of reasonable diligence." Ch. 198, sec. 2, § 13–80–116, 1977 Colo.Sess.Laws 816, 817.

Section 105(1)(b) refers not to minors under six at the time of suit, but to minors who are under six when the act or omission that gives rise to the cause of action occurs. Thus, even though the plaintiff was 15 years old when the 1977 amendments were enacted, this suit falls under (1)(b) because the plaintiff was a minor under the age of six when the act giving rise to the cause of action occurred. *See Licano v. Krausnick*, 663 P.2d 1066, (Colo.App.1983) (plaintiff, born in 1962, allegedly suffered malpractice in 1965; suit filed in 1982 barred because plaintiff was under six when the cause of action accrued, and, since her eighth birthday was in 1970, she had until July 1, 1978, the end of the one-year grace period, to institute the action).

Since plaintiff did not file this suit by July 1, 1978, it is barred unless some provision of section 13–80–105 allows a longer time. Thus, the crux of question 1, like question 2, is the interaction between the "under six" provision in (1)(b) and the "disability" provision in 103.

## II.

The issue presented in certified question 2 is whether the plaintiff's mental incompetence, alleged to be caused by the defendant, tolled the statute of limitations. The answer to this question turns on whether the disability statute, 103, applies to 105(1)(b) and (2), in addition to 105(1), or whether, as the federal trial court held, the disability statute applies only to 105(1), and 105(1)(b) and (2) apply to 105(1) as modified by the disability statute.

The majority holds that the mental incompetence of the plaintiff (a disability under 105(3)) suspends the exception relating to children under six found in 105(1)(b), which would otherwise bar this suit. That is, the disability statute, 103, applies to both 105(1) and to the exception found in 105(1)(b) and, by implication, 105(2).

When the disability is mental incompetency, this analysis has superficial appeal. There is no apparent conflict between a section providing a special statute of limitations for children under six, such as 105(1)(b), and one suspending that special

statute of limitations because of mental incompetency.

However, if 103 is applicable to 105(b) and (2), then it must be applicable for all "person[s] under disability" as defined in 105(3), as 105(3) offers no grounds for distinguishing between the disabilities listed therein. Included in the definition of "person under disability" is a minor under 6 and a person under eighteen years of age who does not have a natural or legal guardian.

The majority's analysis, therefore, requires that a child under six—a person under disability according to the definition found in 105(3)—is exempted from section 105(1)(b) by the operation of 103, even though 105(1)(b) is applicable only to children under six. Similarly, under the majority's analysis, a person under eighteen without a natural or legal guardian (who is thereby disabled under 105(3)) is exempted from the provisions of 105(2) by the operation of 103, even though 105(2) is applicable only to such a person.

Stated differently, plaintiffs that fit into 105(1)(b) and (2) are always also "persons under disability" as defined in 105(3). Under the majority's analysis, which holds that 103 is applicable to 105(1)(b) and (2), those provisions can never be applied because the only persons covered by them are disabled under 105(3) and therefore exempt from them. I must therefore reject the majority's analysis.[1]

My construction of section 105 is as follows: subsection (1) states a general rule. Subsection (3) is definitional; the definition provides the circumstances under which 103 applies to modify the general rule for "persons under disability." Subsections (1)(b) and (2) are exceptions to 105 as modified by section 103, and provide specialized instructions regarding the circumstances they cover.

Thus, the statute of limitations for medical malpractice is two years and the repose provision is three years, the general rule. If a person is under a disability for any reason, the rule is suspended so long as the disability continues, except in the special circumstances listed in 105(1)(b) and (2). When 105(1)(b), or (2) apply, they control 105(1) as modified by 103 through 105(3).

*Southard*, which dealt with an adult incompetent, fits squarely into this analysis. The statute of limitations and repose for medical malpractice are two and three years, respectively. However, Southard was "disabled" under section 105(3), so the general rules are suspended for so long as the disability continues, unless one of the exceptions applies. In the case of an adult incompetent, none do. *Southard* correctly

---

1. If a child is under six when the act or omission is or should have been discovered, the statutes of limitation and repose begin to run on his sixth birthday, because, under *Southard*, the statute of limitations begins to run when the disability is removed from the "person under disability." Thus, the two year statute of limitations expires on his eighth birthday. In such cases, the majority's interpretation renders 105(1)(b) redundant. This violates a basic principle of statutory construction. See § 2-4-201(1)(b), 1B C.R.S. (1985 Supp.) (construe statute so as to given meaning to all its provisions). A similar analysis could be used to show the majority's analysis renders 105(2) redundant.

More importantly, in other cases the result whether 105(1)(b) or 103 is applied may differ. For example, suppose an act or omission which will give rise to a cause of action occurs before the child is six, but was not discovered until he is six years and nine months of age; suit is filed when the child is eight years and six months of age. Under 105(1)(b), the suit would be barred.

However, we have held that 103 "is intended to toll the applicable statute of limitations during the period of disability" and such a rule applies "equally to the three-year period of repose." *Southard* at 897. The statute of repose begins to run on the sixth birthday of the child, and the statute of limitations begins to run when the child was six years and nine months old, when the act was discovered. Therefore, under 103 the suit filed less than two years after the cause of action accrued and less than three years after the disability was removed would be timely.

Thus, the majority's analysis either results in 105(1)(b) being redundant as the result it reaches is the same as that reached by 103, or, it renders 105(1)(B) meaningless because plaintiffs under it are also "persons under disability," and 103 may thereby allow them a longer time than 105(1)(b) to file suit.

held 105(1) did not bar the adult incompetent's suit brought more than three years after the cause of action arose.

In the present case, plaintiff was a "person under disability" at the time the cause of action arose.[2] The general limitation of two years and the repose provision of three years are modified by his disability, and are thus suspended so long as the disability lasts, unless one of the exceptions applies. In this case, unlike *Southard*, one does. Plaintiff's cause of action arose before he was six, and, under the special provision found in 105(1)(b), he had until his eighth birthday to file this suit.[3]

This analysis was foreshadowed in *Southard* when we stated,

[Section 13–81–103] is intended to apply to any statute of limitations in this state ... unless there exists a special statute pertinent to the claim that conflicts with the general provisions of [it].

*Southard* at 897.

Here, there is a special statute that deals specifically with a child under six. As such, a basic tenet of statutory construction requires that the specific rule prevails over the general. *See* § 2–4–205, 1B C.R.S. (1980).

This reading is not at odds with the language or structure of the statute. While section 13–81–103 states that it applies to "any" statute of limitations, this mandate must be read in the context of each individual statutory section. Applying the disability statute to 105(1)(b) or (2) renders them meaningless, as parties that fall into 105(1)(b) or (2) are always also disabled under 105(3). Thus, even though 103, by its terms, applies to "any" statute of limitations, I read this to mean it applies to any general statute of limitations or repose. I do not see in 103 a requirement to apply it to exceptions to a general rule where such application would read the exception out of the statute.

Finally, indefinitely suspending the statute for adult incompetents, while giving infant incompetents a longer than usual, but limited, time to file suit is by no means irrational. The legislature no doubt realized that while adult incompetents may have to care for themselves, mentally incompetent children under six rarely are so situated. The chances that a mentally incompetent infant will have neither a parent nor guardian of some type are extremely small.

If a child does not in fact have a natural or legal guardian, 105(2) suspends the statute of limitations until a guardian ad litem is appointed. This provision applies to all children under eighteen and expressly controls the remainder of section 105. Thus, in the unusual case where a mentally incompetent child does not have a natural or legal guardian, the legislature has allowed such child two years from the time a legal guardian is appointed to institute an action.

The legislature has enacted a statute that strikes a balance between the need to protect disabled persons and the important social goal of bringing law suits in a timely fashion, before facts, witnesses, and records are no longer available.

Since no longer period of limitations was provided by the 1977 amendments, July 1, 1978 (the expiration of the grace period), was the last day this suit could be timely filed. Accordingly, I would answer certi-

---

**2.** Obviously, using a term of art from the 1977 amendments to refer to plaintiff's status during the years before those amendments is an anachronism. Neither plaintiff nor anyone else had any idea in those years that, under the 1977 amendments, he was a "person under disability."

However, section 105(1)(b) applies to plaintiffs whose causes of action accrue from an act or omission that occurred before their sixth birthday.

Thus, for purposes of analyzing the 1977 amendments, one can speak of the plaintiff being a "person under disability" during the years prior to the time those amendments were enacted, despite such statement's technical inaccuracy.

**3.** Since his eighth birthday had long passed on the effective date of the amendments in 1977, the applicable limitation period was the "grace period," which expired on July 1, 1978.

fied question 1 in the affirmative and question 2 [4] in the negative.

## III.

Since I answer questions 1 and 2 differently than the majority, it is necessary to answer question 3, which provides,

Did the third clause of the [first] sentence of subsection [2] of the medical negligence statute of limitations, Section 13–80–105, [6] C.R.S. [1985 Supp.], which provides that "if there is a discovered act or omission which could give rise to an action, the limitations period shall not run unless a guardian ad litem is appointed to represent the minor child," toll the running of the medical negligence statute of limitations in this case until the appointment of Steven Clyde Tenney's parents as his co-guardians, thereby rendering plaintiffs' action timely?

Though the Tenth Circuit Court of Appeals inquired only about the "third clause of the [first] sentence," it is elementary that a statute must be construed in its entirety, not as a series of single phrases, each viewed in isolation. In its entirety, the section provides:

The limitations period provided for in subsection (1) of this section shall not run during any period when the said minor is under the age of eighteen years and has no natural or legal guardian, but such action may be instituted by or in behalf of said minor within two years after a legal guardian is appointed by a court of record or within two years after the person under such disability reaches

eighteen years of age, whichever shall occur first; except that, if there is a discovered act or omission which could give rise to an action, the limitations period shall not run unless a guardian ad litem is appointed to represent the minor child. Any real party in interest may apply to the court for the appointment of such guardian ad litem. A real party in interest shall include the party against whom such an action may be brought.

Section 13–80–105(2), 6 C.R.S. (1985 Supp.).

Ignoring the last two sentences, which are irrelevant for our purposes, the remainder of the subsection is a single sentence. The first two phrases provide for the suspending of the statute of limitations for minors with "no natural or legal guardians" until one of two specified events occurs. The third phrase, separated from the first two by a semicolon, provides an exception for a discovered act or omission. It tolls the statute until two years after a guardian ad litem is appointed to represent "the minor child." It is this third phrase that is the subject of certified question 3.

The term "the minor child" must mean a particular type of minor child; otherwise, the legislature would have used the term "a minor child." From the structure and content of the entirety of 105(2), it is clear that the kind of minor being referred to is the type already referred to three times in 105(2); i.e., one without a natural or legal guardian. The third phrase is simply an exception to the rule laid down in the first two phrases.

---

**4.** Certified question 2, which was written following the federal trial court's holding that this suit was barred by the statute of limitations, inquires whether the suit may be held "timely on the theory that mental incompetence caused by defendant's negligent conduct tolled the statute of limitations for an action based on that conduct?" Because the majority holds the federal trial court was incorrect in its holding, it does not reach the actual substance of certified question 2.

The question implicitly refers to decisions of this court which held that, in some circumstances, equity will prevent a tortfeasor from relying on the statute of limitations when the reason the suit was not timely filed was the very subject of

the suit. *See, e.g., Klamm Shell v. Berg,* 165 Colo. 540, 441 P.2d 10 (1968) (where plaintiff rendered mentally incompetent by defendant's intentional tort, suit filed 14 months later, when statute of limitations was one year, would be allowed; defendant equitably estopped from relying on statute of limitations because reason for late-filing was subject of suit).

A suit being 2 months late on a one-year statute of limitations is one thing; a suit being several years late is another. Further, in this case the conduct complained of was alleged to be negligent, not intentional.

I would hold that this is not an appropriate case for equity to render this action timely.

Plaintiff argues that the third phrase is an exception to the entire statute, not just the first two phrases. Therefore, plaintiff argues, since he did not have a guardian ad litem until late 1980, his filing of this suit in mid–1982 was within the two year time limit the third phrase allows.

To construe the third phrase as applying to plaintiff, despite the fact that the first two phrases do not (because he has had at all times a natural guardian), would be to say a single phrase, set off from the remainder of a sentence by only a semicolon, not only modifies that sentence but, also, modifies the entire statute. This would give the phrase much more power than its content and context suggest. Reading the third phrase as an exception to the first two phrases, rather than the entire statute, is a much more obvious and less tortured construction.

The plaintiff does not fall within the first two phrases in 105(2), and therefore his late filing of this suit cannot be saved by the exception found in the third phrase in 105(2). I would answer the third question in the negative.

Accordingly, I conclude that the action filed by the plaintiffs is time-barred under Colorado law.