Robert E. **HILL**, individually and as parent and next friend of Tasha R. Hill, a minor; and Cynthia G. Hill, individually, and as parent and next friend of Tasha R. Hill, a minor, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

No. 90–B–1071.

United States District Court,
D. Colorado.

June 8, 1994.

See also 751 F.Supp. 909.

Shelley B. Don, David L. Hiller, Watson W. Galleher, Don, Hiller & Galleher, P.C., Denver, CO, for plaintiffs.

John Moran, U.S. Army Litigation Div., Arlington, VA, Stephen D. Taylor, Asst. U.S. Atty., Denver, CO, for defendant.

## AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

BABCOCK, District Judge.

This is a case under the Federal Tort Claims Act concerning the government's now admitted negligent treatment of an infant, Tasha Hill, at the Evans Army Community Hospital (EACH) in October 1988. Tasha was four and one-half months old when she was brought by her parents, Cynthia and Robert Hill (referred to jointly as the parents), to the outpatient clinic at EACH, located at Fort Carson, Colorado, on the morning of October 17, 1988. She was diagnosed and treated for infantile spinal meningitis. As a result of her negligent care, she sustained permanent brain damage and catastrophic injury.

The negligence alleged included: failure to perform a prompt assessment of Tasha upon her arrival at the clinic; delay in the initial administration of antibiotics; the absence of appropriate supervision by an attending physician; inadequate, incomplete, inconsistent and unreliable medical records; and failure to recognize and treat Tasha's complications of her meningitis. The government vigorously contested negligence and causation throughout this case until the third day of trial when it admitted that the agents or employees of the United States were negligent and that their negligence was a proximate cause of injury to Tasha Hill. At that point, the trial proceeded on the issue of Tasha's damages and her parent's independent claims of liability and damage.

## I. TASHA'S DAMAGES

█ Tasha sustained devastating permanent neurologic damage as a result of her negligent care. She is severely impaired, both in her mental and motor skills. She sustained damage to brain tissue as a result of increased intracranial pressure, a cerebral infarct (a form of stroke), and prolonged seizures which were left untreated. Tasha suffers severe static encephalopathy with spastic tetraparesis and contractures, severe psychomotor retardation, and a left hemianopia. Tasha functions both mentally and physically at about the level of a six or seven-month-old infant. Despite her mental and physical disabilities, during pretrial and trial proceedings I observed in her a distinct personality and rudimentary ability to express pleasure and displeasure. Tasha is fed through a g-tube. She will never be toilet trained and requires frequent diaper changes, approximately ten to twelve times per day. In addition, Tasha requires twice-weekly enemas to clear her bowels. Tasha's injuries are permanent and there is no hope for physical improvement. However, with good care and therapy she can maximize her mental development marginally and minimize her physical disabilities.

Despite the severity of Tasha's injuries and impairments, expert testimony established that Tasha has a normal life expectancy of an additional 73.92 years from the date of trial. Her life expectancy and its quality are clearly tied to the quality of her care.

### A. Economic Damages

The plaintiffs' Rehabilitation Expert, Ms. Helen Woodard (Ms. Woodard), testified to the necessary services and reasonable costs of providing lifetime care for Tasha. The plan was not contested by the government except for three components in the areas of personal care, transportation expense and home modification. Indeed, the government's expert in this field could not say that any component of Ms. Woodard's plan was unnecessary or unreasonable but suggested alternate views in these three specific areas. Ms. Woodard presented a range of reasonable costs for each component of the plan. The plaintiff's economist, Dr. Singell, presented these costs discounted to present value. The government's economist disputed in some respects Dr. Singell's choice of discount factor but I am persuaded by Dr. Singell's approach and will apply it throughout. Where a range of costs was provided, I

award Tasha damages equal to the median cost.

1. *Medical Care:* Tasha will always require close medical supervision, including good pediatric care until she reaches the age of eighteen, and care by an internist after that age through the rest of her life. Tasha also will require neurological care as a result of her seizure disorder and orthopedic care for her physical deformities. Tasha should have another hearing evaluation and periodic eye examinations. Tasha will require blood tests every six months to monitor the blood levels of her medications. Other health care needs and expenses will include developmental assessments every other year up to the age of twenty-one, dental care, and dietary consultations. Finally, because of Tasha's numerous neurologic and orthopedic ailments, it is probable that she will be hospitalized frequently throughout her life, at an average of seven days per year.

As a result of Tasha's injuries, she is not insurable through any market-based health insurance program. However, she is eligible for coverage through state operated high risk insurance programs, such as the Tennessee Comprehensive Health Insurance Program (TCHIP) (subject to a preexisting condition exclusion for six months). At the present time, TCHIP has lifetime benefits of $500,-000, and an annual cap on out of pocket costs of $2,500. In order to protect the lifetime limits so that they will be available in case of serious illness and prolonged hospitalization or surgery, claims against this insurance coverage must be carefully limited.

Tasha is awarded $833,700 to cover these medical costs.

2. *Medication and Supplies:* Tasha's medications and supplies include prescription and over-the-counter medications, diapering and bowel care supplies, and gastrostomy and feeding supplies. Tasha is awarded $414,350 to cover her future cost of medication and supplies.

■ 3. *Personal Care:* Tasha will never be able to care for herself or to do any remunerative work. She will require twenty-four hour a day care. Pursuant to the law in most states, this care must be provided by a licensed practical nurse (LPN) or by the parents because Tasha must be fed and her medications administered through the g-tube. Tasha must be monitored through the night and moved at least every four hours to change her position as she is unable to roll over.

Since her injuries, the parents have cared for Tasha at home and it is their intention to continue to do so, with the assistance of LPN care. However, at some point in time, Tasha's care may become too difficult for the parents to handle, either because of changes in Tasha's condition or a decrease in the parents' physical strength and stamina. At that time, Tasha may be transferred to a residential care facility.

Personal care is broken down into two time frames—before age 21 and after age 21. Before age 21, Tasha seeks damages sufficient to hire an LPN 16 hours per day, and a nurses aid for 8 hours at night, thus providing for her round the clock care. The government's rehabilitation expert, Dr. James Gracey (Dr. Gracey), presented lower cost alternatives to this pre-age 21 phase of the plan, none of which I found reasonable or persuasive.

As one alternative, the government, through Dr. Gracey, suggests that the parents substitute for the nurses aid for the 8 hours at night. Under this alternative, the parents care would not be compensated. I conclude that the full 24 hours of required care should be compensated, whether performed by a nurses aid or by the parents. Moreover, requiring the parents to attend to Tasha during the night is beyond the level of care that would be required for a normal child. As of the date of this order, Cynthia Hill has not had eight hours of uninterrupted sleep since the date Tasha returned home from the hospital. Under the circumstances, eight hours of uninterrupted parental sleep is not unreasonable. Thus, I agree with plaintiffs that the compensation for Tasha's care should be on a 24 hour per day basis.

A second alternative presented by Dr. Gracey is to have an LPN care for Tasha during her feedings only—the time that particular level of care is required by law. This would

require a visit from an LPN three times per day for one to one and one-half hours per visit. Ms. Woodard testified, however, that there would be additional costs associated with this alternative, such as transportation time and expense due to the brevity of the visits. In sum, I find plaintiffs' proposal more reasonable and will award Tasha the sum of $185,000 annually to age 21 to cover the cost of 24 hour personal care. This award is $2,519,200 on a present value basis.

After age 21, Ms. Woodard testified that appropriate long term planning for Tasha will include placement into an individualized supported living arrangement. Ms. Woodard admitted on cross-examination by the government, however, that an individualized living arrangement is not the standard of care in the community for a person with Tasha's level of disability. Dr. Gracey testified that a more appropriate alternative for Tasha would be a community living arrangement in a group home of two to eight disabled individuals. It is Dr. Gracey's opinion that this arrangement would provide a more stimulating environment for Tasha. The "cadillac" of such programs was estimated by Dr. Gracey to cost $350 per day, or $128,000 per year. Dr. Gracey's testimony on this issue is persuasive and reasonable. I will award Tasha $128,000 annually for age 21 through her life expectancy. On a present value basis, I compute this award to be $4,465,700.

■ 4. *Psychological Counseling and Family Support Services:* Tasha's family requires psychological counseling to assist them in coping with Tasha's severe impairments. The purpose of this counseling is to benefit Tasha by helping her family cope with her demands and needs. Ms. Woodard recommended that this family counseling consist of three hours of counseling a week for two years, decreasing to one hour per week for an additional two years. Thereafter, the parents should participate in seminars to assist them in providing care to Tasha, approximately three seminars sometime during the next ten years. Finally, the parents should become members in one or more appropriate support groups. Tasha is awarded $43,550 to cover these expenses.

5. *Case Management Services:* Because of the extent and complexity of the medical and physical care services required by Tasha, Ms. Woodard testified that a case management professional should be retained to assist in the planning, coordination, and supervision of Tasha's care. The award required to provide for this service is $246,500.

■ 6. *Travel and Transportation Expenses:* Tasha's physical impairments require special transportation facilities. Ms. Woodard indicates that the parents need a van modified with extra features to transport Tasha. Plaintiffs request the cost of a modified van, in the range of $28,500 to $32,900, to be replaced every 5 to 7 years.

Dr. Gracey testified that a more accurate estimate of Tasha's transportation expense is the difference in cost between a car and a van, $12,000, plus the cost of modifying the van, $3,600, for a total of $15,600, to be incurred every 5 to 7 years. This estimate is based on the rationale that Tasha or her family would have incurred the average cost of a car throughout her life in any event. I find this rationale persuasive and will award Tasha transportation expenses on this basis. I compute the present value of this award to be $117,000.

7. *Development Assessments:* Ms. Woodard recommends that Tasha receive annual developmental assessments every year to age 14 and then every two years to age 21. The purpose of these assessments is to check Tasha's developmental progress and to assess her needs. Tasha is awarded $41,350 to provide this service.

8. *Rehabilitation Services:* Regular physical therapy is required (three clinic sessions per week through age seven, and two clinic sessions per week thereafter through the rest of her life), along with speech therapy (two clinic sessions per month through age seven), oral motor therapy (12 to 14 sessions per year), and occupational therapy (two clinic sessions per week for life). Improperly administered, such therapy can result in serious physical injury. Tasha's award to cover rehabilitation services is $1,164,900.

9. *Special Equipment:* Special equipment is required for Tasha, including things such as a wheelchair, bath seat, hospital bed, orthotics, hoist, prone stander, feeder seat, and a grasshopper mobile positioning system. This equipment generally requires replacement every five to seven years. Tasha is awarded $131,250 to cover the cost of this equipment.

10. *Home Modification Costs:* Finally, the Hill family home requires modifications to accommodate Tasha's special equipment and needs, including ramps, widened doorways, thermostatic controls, an accessible bathroom with special bathing facilities, audio-visual and electronic monitoring equipment, and additional space for the non-family caregiver. These modifications, while expensive, do not typically add to the value of the home for resale.

The parties disagree on an appropriate amount for home modification. Plaintiffs estimate the renovation will range between $55,000 to $63,000. Defendants estimate the cost to be 20% to 25% of the average home price of $120,000 to $125,000, which calculates to be $20,000 to $31,250. Both experts concede that this is a difficult cost to determine. Because I am unable to determine which estimate is the most accurate, I will award the average of both party's estimates—$42,300. Accordingly, Tasha is awarded $42,300 to make the necessary modifications to her family's home.

Plaintiffs have requested the modification award to occur twice during Tasha's lifetime; immediately and at age 21. Because a group living arrangement after age 21 appears most reasonable, the need for an individualized modified home at age 21 has been eliminated. Thus, this is to be a one-time award.

11. *Future Loss in Earnings Capacity:* As noted above, Tasha will never be able to engage in any remunerative occupation. The present value of her lost earnings over the course of her lifetime was estimated based upon the reasonable assumptions that she may have completed some college education and based upon an appropriate net discount rate. Tasha is awarded $508,600 for loss of future earnings.

**B. Non-economic Losses**

Colorado law generally limits the recovery of non-economic damages to $250,000 per party, subject to the court's discretion to increase that amount to $500,000 based upon clear and convincing evidence. C.R.S. § 13–21–102.5(3)(a). I find that Tasha has suffered enormous pain and suffering and a manifest loss of enjoyment of life. I therefore find, by clear and convincing evidence, that Tasha is entitled to the payment of the maximum amount permissible under Colorado law, $500,000, for her non-economic losses. Although Tasha will continue to suffer these losses in the future, I elect to allocate the full amount allowable under Colorado law, $500,000, to the past damages.

**C. Physical Impairment and Disfigurement**

In addition to economic and non-economic damages, an injured plaintiff in Colorado is entitled to recover damages for physical impairment and disfigurement. *Herrera v. Gene's Towing,* 827 P.2d 619, 620–21 (Colo. App.1992). In this case it is clear that Tasha has suffered catastrophic injuries, which include severe impairment and disfigurement. In compensation for past and future impairment and disfigurement, I award Tasha $2,500,000.

**III. STRUCTURE OF TASHA'S DAMAGE AWARD**

I have the inherent authority to structure damage awards or to impose trusts or reverter conditions to safeguard the best interest of the plaintiff. *Hull v. United States,* 971 F.2d 1499, 1506 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1844, 123 L.Ed.2d 469 (1993). I conclude that it may be in Tasha Hill's best interests to order that money damages awarded to Tasha Hill, with the exception of those for loss of earning capacity and non-economic loss, be held in a reversionary trust by an independent trustee, not a parent or legal relative of Tasha Hill. Because this issue was explicitly reserved for future hearing, I will address this question at a later time after a hearing conducted pursuant to *Hull.*

## IV. PARENTS' DAMAGES

### 1) Claim for Past Care of Tasha

■ Cynthia and Robert Hill have stated a claim for damages for the care they have provided to Tasha. There is no dispute that Robert and Cynthia Hill have provided full-time care to Tasha over the past five and one-half years virtually equivalent to that of an LPN. They are entitled to recover the full value of these services from the government. The expert testimony was that the parents' care for Tasha has been excellent. My observations during pretrial and trial proceedings confirms this testimony. As testified to by several of the plaintiffs' expert witnesses, Tasha requires 24 hour per day care. The government contests only the rate at which the value of these services should be calculated.

The parents seek compensation at the cost, identified by their rehabilitation expert, of providing 24 hour care for Tasha in the future, $185,000 per year. This totals $1,017,500 for the five and one-half year period. The government introduced no evidence on this issue and argues for a lesser amount, but presents no rational alternative. I consider the parents' prayer reasonable given that Tasha's care requires feeding and the administration of medications through a g-tube, a level of care which, by most state laws, must be provided by a licensed practical nurse.

Cynthia Hill testified that she has provided approximately 70% of Tasha's care while Robert Hill has provided 30%. Thus, I award the $1,017,500 as follows: $712,250 to Cynthia Hill and $305,250 to Robert Hill.

### 2) Negligent Misrepresentation

■ In a previous order, dated November 27, 1990, I denied the government's motion to dismiss the parents' claim for negligent misrepresentation holding that the misrepresentation exception, 28 U.S.C. § 2680(h), to the government's waiver of immunity is inapplicable in medical malpractice cases. *See, e.g., Keir v. United States*, 853 F.2d 398, 410–11 (6th Cir.1988); *Ramirez v. United States*, 567 F.2d 854, 856–57 (9th Cir.1977). The government is immune, however, to the extent such a claim seeks relief for economic losses. *See Jardel Enters., Inc. v. Triconsultants, Inc.*, 770 P.2d 1301, 1304 (Colo.App.1988).

■ Here, although the parents have established negligent misrepresentation on behalf of the government, they have failed to establish, by a preponderance of the evidence, their alleged damages proximately resulting from physical injury. Accordingly, I will deny recovery on this claim.

The standard of care requires that infantile meningitis be treated by the most experienced physician and nursing staff available. Where available, the infant should be treated in a pediatric intensive care unit. EACH did not have a pediatric intensive care unit. Further, if EACH had medical and nursing staff which was experienced in treating infantile meningitis, that staff was not consistently assigned to the care of Tasha Hill. Notwithstanding this lack of a pediatric intensive care unit and the inexperience of the EACH staff in treating infantile meningitis, the EACH staff represented to the parents that EACH had both the facilities and the staff necessary to properly care for Tasha and, in response to their concerns, specifically told the parents that it was not necessary to transfer Tasha to another hospital. The EACH staff made these representations knowing that the parents would rely on them. The parents relied on the representations of the EACH personnel and did not transfer Tasha. It is the parents testimony that had they been informed of EACH's lack of proper facilities and its inexperienced personnel, they would have arranged for Tasha's transfer to another hospital. Although the EACH staff did not intend to mislead the parents to their detriment and the detriment of Tasha, I find that the EACH staff was negligent in representing to the parents that EACH had the facilities and the experienced staff necessary for proper care of infantile meningitis.

Both parents testified generally that they are experiencing some back pain caused by excessive lifting of Tasha. This testimony was uncorroborated by any medical testimony. I am left to speculate as to causation. For example, Tasha has one older and two

younger siblings and Mr. Hill is a heavy equipment mechanic. I conclude that the parents have failed to prove by a preponderance of the evidence that they experienced physical injury as a proximate cause of the governments negligent misrepresentation. I will deny recovery on this claim.

### 3) Loss of Consortium

■ There is no case law in Colorado allowing a claim by a parent against a third party for the loss of the society and companionship of a child due to injuries to the child caused by the wrongful conduct of that third party. The Colorado Supreme Court has denied, however, the analogous claim of a child for the loss of the society and companionship of an injured parent. *See Lee v. Colorado Department of Health*, 718 P.2d 221 (Colo.1986)

The parents argue that legislation since the Lee decision suggests that the Colorado Supreme Court would reach a different result if faced with this issue today. The legislation the parents refer to is a 1985 amendment to the Colorado Wrongful Death Act, expanding the categories of damages which can be recovered in a wrongful death action. *See* C.R.S. § 13–21–203 (1993 Cum.Supp.). Under the old statute, damages were limited to the net pecuniary losses resulting from the death of a family member, and no damages could be recovered for grief or loss of companionship. *Espinoza v. O'Dell*, 633 P.2d 455 (Colo.1981). The amendment to the statute now expressly authorizes the recovery of damages for "grief, loss of companionship, pain and suffering, and emotional stress...." C.R.S. § 13–21–203 (1993 Cum.Supp.). The parents also cite two cases from other states in which the courts, faced with the similar absence of case law, took it upon themselves to change the law in absence of specific legislative action and allow recovery for a parent's loss of companionship of a child. *See e.g., Reben v. Ely*, 146 Ariz. 309, 312, 705 P.2d 1360, 1363 (Ariz.App.1985); *Norvell v. Cuyahoga County Hospital*, 11 Ohio App.3d 70, 463 N.E.2d 111, 114 (1983).

I am not persuaded by the parents' arguments. Following the example of the Colorado Supreme Court in *Lee*, I believe that this issue is one for the Colorado General Assembly. Accordingly, I will deny the parents claim for loss of companionship.

Accordingly, it is ORDERED that judgment enter in favor of Robert E. Hill and Cynthia Hill as parents and next friends of Tasha R. Hill against the government as follows:

1) economic damages (life care) of $10,-019,800;

2) future loss of earning capacity of $508,-600;

3) $500,000 in non-economic damages and $2,500,000 for physical impairment and disfigurement;

It is further ORDERED that judgment enter:

1) in favor of Cynthia Hill, individually, for $712,250, and Robert Hill, individually for $305,250, in compensation for their past care of Tasha;

2) in favor of the government upon the parents' claims for damages for negligent misrepresentation and loss of consortium.

It is further ORDERED that, pursuant to Section III herein, the structure of Tasha's award for economic damages shall be determined at a later hearing and set forth in a separate order. A scheduling hearing shall be held Wed., July 13, 1994 at 8:30 A.M.

It is further ORDERED that plaintiffs are awarded their costs.

### JUDGMENT

PURSUANT TO and in accordance with the Findings of Fact, Conclusions of Law and Order filed June 8, 1994, by the Honorable Lewis T. Babcock, District Judge, it is

ORDERED that judgment is entered in favor of the plaintiffs, Robert E. Hill and Cynthia Hill, as parents and next friends of Tasha R. Hill, and against the defendant, United States of America, as follows:

1) economic damages (life care) of $10,-019,800;

2) future loss of earning capacity of $508,-600;

3) $500,000 in non-economic damages and $2,500,000 for physical impairment and disfigurement;

It is FURTHER ORDERED that judgment is entered

1) in favor of plaintiff Cynthia Hill, individually, for $712,250, and in favor of plaintiff Robert Hill, individually, for $305,250, and against the defendant, United States of America, in compensation for plaintiffs' past care of Tasha;

2) in favor of the defendant, United States of America, and against the plaintiffs, Robert E. Hill and Cynthia G. Hill, upon the parents' claims for damages for negligent misrepresentation and loss of consortium, and those claims are dismissed.

It is FURTHER ORDERED that plaintiffs are awarded their costs upon the filing of a bill of costs within 10 days of the entry of judgment.

DATED at Denver, Colorado, this 8th day of June, 1994.