Wade L. HANCEY and Patricia Ann Hancey, individually and as parents and next friends of Michael W. Hancey, Plaintiffs,

v.

UNITED STATES of America; Boy Scouts of America; Denver Area Council, Boy Scouts of America; and Boy Scout Troop 552—Varsity Team 552—Explorer Post 552, Defendants.

Civil Action No. 95–WY–3265–CB.

United States District Court,
D. Colorado.

May 29, 1997.

Melvin B. Sabey, Denver, CO, for Plaintiffs.

Regina Rodriguez, Asst. U.S. Atty., Denver, CO, for U.S.

John M. Palmeri, White & Steele, P.C., Denver, CO, for remaining defendants.

## ORDER ON MOTION TO DISMISS

BRIMMER, District Judge.

On May 22, 1997, the Colorado Supreme Court declined to certify the following question:

> Does Colorado law permit parents to recover for the loss of a child's companionship and society when the child is severely injured?

As a result, this Court now must rule upon defendants' motion to dismiss. After hearing the parties' oral arguments and considering the parties' briefs, the Court FINDS and ORDERS as follows:

### *Background*

On December 31, 1993, Michael Hancey and a group of Boy Scouts and Scout leaders from Troop 552 in Littleton, Colorado embarked on a Scout activity consisting of tubing, sledding, and winter recreation at St. Mary's Glacier near Idaho Springs, Colorado. Hancey and three other boys went ahead of the group and were the first to reach the glacier. The four boys climbed onto three inner tubes and slid down the hill. The boys'

ride ended tragically when their tubes carried them into rocks protruding from the snow. All four boys were injured, but Michael Hancey suffered the most severe injuries. He was comatose for an extended period of time and suffered permanent brain injuries. Michael's injuries have left him severely disabled.

Wade and Patricia Hancey filed a claim against Boy Scout Troop 552, Varsity Team 552, and Explorer Post 552 (collectively the "Troop") for the loss of Michael's companionship and society. If the Troop is found liable, the Hanceys can access liability insurance provided by the BSA. The BSA's insurance policy covers the BSA, DAC, and the Troop.[1] The liability insurance is funded by annual registration fees paid by the scouts. Michael Hancey paid his $7 annual registration fee. Prior to accepting a youth's application for membership, the BSA requires a parent or guardian read an information sheet that informs parents that "[t]he BSA local council provides ... liability insurance protection." Hancey Aff. Ex. A.

### Standard of Review

The specific standards for motions to dismiss are well recognized, and need only be briefly restated. The Court must grant the Troop's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) only if Wade and Patricia Hancey can present no facts in support of their claims that would entitle them to relief. *Horowitz v. Schneider Nat'l, Inc.*, 992 F.2d 279, 281 (10th Cir.1993).

### Analysis

■ In Colorado, the issue of whether a parent may recover for the tortious loss of his or her child's consortium has not been decided.[2] *See Sanchez v. Sch. Dist., 9–R*, 902 P.2d 450, 453 (Colo.Ct.App.1995); *Hill v. United States*, 854 F.Supp. 727, 734 (D.Colo. 1994). The Colorado Supreme Court, however, has denied the related claim of a child suing for the loss of an injured parent's companionship. *See Lee v. Colorado Dep't of Health*, 718 P.2d 221 (Colo.1986).

The Troop asserts that the Colorado Supreme Court's denial of a child's claim for the loss of a parent's companionship disposes of the issue presently before this Court. The Court disagrees. Several states recognize a parent's claim for loss of a child's companionship while denying the related claim for a child's loss of a parent's companionship. *See Dymek v. Nyquist*, 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (1984) (recognizing parent's right of action for loss of child's companionship); *Koskela v. Martin*, 91 Ill. App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1980) (declining to recognize child's right of action for loss of parental consortium); *Davis v. Elizabeth General Medical Ctr.*, 228 N.J.Super. 17, 548 A.2d 528 (Law Div.1988) (recognizing parent's right of action for loss of child's companionship); *Russell v. Salem Transp. Co.*, 61 N.J. 502, 295 A.2d 862 (1972) (declining to recognize child's right of action for loss of parental consortium); *First Trust Co. of North Dakota v. Scheels Hardware & Sports Shop, Inc.*, 429 N.W.2d 5 (N.D.1988) (recognizing parent's right of action for loss of child's companionship); *Morgel v. Winger*, 290 N.W.2d 266 (N.D.1980) (declining to recognize child's right of action for loss of parental consortium).

The Troop also argues that determining whether the loss of an injured child's consortium should be compensable is an issue for the Colorado General Assembly. In support of its contention, the Troop points to *Hill v. United States of America*, 854 F.Supp. 727 (D.Colo.1994), where Judge Babcock refused to recognize two parents' claims for the loss of their child's companionship and society. Judge Babcock held that the issue was one

---

1. A clause in the insurance contract prevents the insurance company from using immunity of the Troop from tort liability, unless the Troop requests the insurance company to interpose the defense. The Troop has made no such request. Accordingly, the Court will not consider the possible application of Colo.Rev.Stat. § 13–21–116 (Supp.1996).

2. Consortium is defined as affection, society, services, companionship, aid, and comfort. *See* CJI–Civ.3d 6:6 (1991). The Court finds no reason to alter the traditional definition as the only material difference between spousal consortium and filial consortium is the lack of intimate relations.

for the Colorado General Assembly. *Id.* at 734. The Court respectfully disagrees.

■ Traditionally, the court, rather than the legislature, expanded the body of tort law. Tort law concerns private relations between parties. As such, it is uniquely suited for case by case judicial development. The common law is constantly evolving and courts have a duty, absent specific action by the General Assembly, to ensure that the law satisfies the needs of a constantly changing society.

## I. Colorado's Wrongful Death Statute

In 1989, the Colorado General Assembly amended the wrongful death statute to permit a surviving party's recovery for noneconomic injury, including loss of companionship. Colo.Rev.Stat. § 13–21–203 (Supp. 1996). By amending the wrongful death statute, the Colorado General Assembly acknowledged the injury for which Wade and Patricia Hancey are seeking redress. Denying Wade and Patricia Hancey compensation for the loss of society and companionship they suffer as a result of Michael's severe injuries while recognizing that the same loss would be compensable if Michael had been killed would be incongruous. *See Gallimore v. Children's Hosp. Med. Ctr.,* 67 Ohio St.3d 244, 617 N.E.2d 1052, 1057 (1993); *Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495, 499 (1975).

## II. The Policy Concerns Expressed in Lee

In *Lee v. Colorado Dep't of Health,* 718 P.2d 221 (Colo.1986), the Colorado Supreme Court denied a child's claim for loss of a parent's consortium. The *Lee* Court expressed the following policy concerns: (1) the efficacy of monetary compensation as a substitute for the loss of companionship and society; (2) the intangible nature of the loss; (3) the difficulty in measuring damages; (4) the individual and societal costs associated with recognizing a new measure of damages; and (5) the risk of overlapping recovery. *Id.* at 233.

By amending the Colorado wrongful death statute, the General Assembly resolved some of the concerns expressed in *Lee.* The diffi-

culty in measuring damages, the efficacy of using monetary damages to compensate for the loss, and the intangible nature of the loss are all refuted by operation of the wrongful death statute.

These same concerns are also refuted by the everyday workings of the tort system. Pain and suffering damages, sought in nearly all tort actions, are inherently difficult to measure and money damages are used to compensate for all sorts of intangible losses for which they cannot fully compensate. A monetary award will not restore the Hancey family's relationships to the place they were prior to the accident, but monetary compensation is currently the best solution our system offers.

Neither the costs associated with recognizing a new measure of damages nor the risk of overlapping recovery should preclude Wade and Patricia Hancey's relief. The *Lee* Court decried the potential societal costs associated with this new form of recovery. The same cry could be sounded each time a party proposes expanding the common law. If the *Lee* Court was concerned with a multiplicity of actions (it did not specify any particular costs), requiring joinder where feasible will remedy the potential problem. *See Reighley v. Int'l Playtex, Inc.,* 604 F.Supp. 1078, 1081 (D.Colo.1985). This Court's only other response is that it cannot imagine any inherent cost that outweighs the goal of the tort system in making victims whole.

■ As to the risk of double recovery, this risk is obviated in other contexts by employing narrowly tailored jury instructions. *See Nulle v. Gillette–Campbell Fire Bd.,* 797 P.2d 1171, 1176 (Wyo.1990). The crux of a parent's claim for loss of filial consortium concerns the loss of services, companionship, and society the parent suffers as the result of an injury to the child. *See Gallimore,* 617 N.E.2d at 1058. Since the child cannot claim these damages and juries are assumed to follow jury instructions, double recovery should not pose a problem. *See People v. Baca,* 852 P.2d 1302, 1308 (Colo.Ct.App. 1992).

In finding that parents may be compensated for the negligent injury of their minor

children, the Court solidifies what was implicitly done twenty-four years earlier in *Miller v. Subia*, 514 P.2d 79 (Colo.Ct.App.1973) ·(finding inadequate evidence to support a father's recovery for the loss of his son's consortium). The law recognizes the uniqueness of family relationships and proclaims that the family has constitutionally protected aspects. *See Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). After examining Colorado's wrongful death statute and the policy concerns expressed in *Lee v. Colorado Dep't of Health*, the Court concludes that the better reasoned and more just approach requires recognition of Wade and Patricia Hancey's loss and a vehicle for redressing it. Accordingly, Wade and Patricia Hancey may pursue their claim for loss of consortium against the Troop.[3]

### *Conclusion*

Based on the foregoing, the Court finds that Wade and Patricia Hancey may seek compensation from the Troop for the loss of Michael's consortium. As a result, the Court **DENIES** the Troop's motion to dismiss and lifts the stay.

---

3. The Court previously ruled that Wade and Patricia Hancey failed to exhaust their administrative remedies regarding their loss of filial consortium claim and, as such, cannot proceed against the United States for the loss of Michael's consortium.