J. Casey ELGIN, D.O., and Pat Harris–
Dubose, P.A., Petitioners/Cross–
Respondents,

v.

Julie BARTLETT and Guy Bartlett, Indi-
vidually and as parents and next friends
of Heather Bartlett, a minor, Respon-
dents/Cross–Petitioners.

No. 98SC622.

Supreme Court of Colorado,
En Banc.

Nov. 22, 1999.

■

Richman & Jones, P.C., Alan E. Richman, C. Todd Drake, Denver, Colorado, Attorneys for Petitioner/Cross–Respondent, Pat Harris–Dubose.

Andrew T. Brake, P.C., Lee T. Judd, Englewood, Colorado, Eugene Deikman, P.C., Eugene Deikman, Denver, Colorado, Attorneys for Respondents/Cross–Petitioners.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari to review three questions regarding the court of appeals opinion in *Bartlett v. Elgin*, 973 P.2d 694 (Colo.App.1998).[1] These questions stem from a medical malpractice suit brought by parents as "next friends" of their injured minor child. We hold that (1) the statute of limitations applicable to the minor's cause of action for medical negligence does not begin to run until the minor reaches the age of eighteen, unless the minor has a court-appointed legal representative; (2) the minor's legal disability does not toll the statute of limitations applicable to the parents' derivative claim for damages; and (3) loss of filial consortium because of a child's injury is not a viable claim available to parents under Colo-

---

**1.** We granted certiorari on the following issues:

  1. Whether the court of appeals erred in concluding that the statute of limitations as to the minor child's claims against Harris–Dubose will not begin to run until she reaches majority or until a legal representative is appointed for her, despite the fact that her parents brought suit on her behalf as next friends.

  2. Whether the court of appeals erred in affirming the dismissal of Julie and Guy Bartlett's claims against Pat Harris–Du-

bose on the grounds that the statute of limitations had expired, and was not subject to the same statute of limitations as the minor child's claims.

  3. Whether the court of appeals erred in affirming the dismissal of Julie and Guy Bartlett's claim for loss of consortium by parents on the grounds that such a claim has not been recognized absent the death of the child, and the recognition of such a claim is best left to the General Assembly.

rado law. Thus, we affirm the judgment of the court of appeals.

## I.

Julie and Guy Bartlett (Bartletts) brought suit as parents and next friends of Heather Bartlett (Heather), a minor, against J. Casey Elgin, D.O. (Elgin) for damages allegedly resulting from the negligent acts of his physician's assistant, Pat Harris–Dubose, P.A. (Harris–Dubose). On November 2, 1990, Harris–Dubose diagnosed nine-year-old Heather as having the flu. Several days later, she underwent surgery after hospital staff diagnosed her as having a ruptured appendix and an abdominal infection.

In July of 1992, the Bartletts filed their initial complaint against Elgin for imputed negligence based on respondeat superior and failure to adequately supervise Harris–Dubose. They alleged that his physician's assistant, having misdiagnosed Heather's condition, did not provide proper treatment and referral to a specialist. They claimed compensatory damages on Heather's behalf and reimbursement of medically related expenses on their own behalf. The Bartletts also claimed damages for their loss of Heather's consortium. They did not name Harris–Dubose as a defendant.

In April of 1996, after learning that Elgin's insurance company was insolvent and that Harris–Dubose had insurance, the Bartletts filed a motion to amend their complaint to include Harris–Dubose as a defendant; the trial court granted this motion. Harris–Dubose answered and then filed for summary judgment, invoking the statute of limitations. Additionally, both Harris–Dubose and Elgin challenged the viability of the filial consortium claim by way of motion for summary judgment.

The Bartletts opposed the summary judgment motions, claiming that Heather's legal disability as a minor tolled the applicable statute of limitations as to both their own and Heather's claims against Harris–Dubose. In their brief to the trial court, they argued that the two-year statute of limitations under section 13–80–102.5(1), 5 C.R.S. (1999) (action must be brought not more than two years

after the date that such action accrues) was tolled by operation of sections 13–80–102.5(3)(d)(II) and 13–81–101, 5 C.R.S. (1999) (person under disability includes minor under eighteen years of age who does not have a legal guardian).

The trial court ruled that the Bartletts' suit on behalf of Heather as next friends was the "functional equivalent" of a suit brought by a guardian ad litem. It dismissed the amended complaint against Harris–Dubose as time-barred, and further ruled that, even if Heather's claims were not time-barred, the statute of limitations had run as to the parents' derivative claims against Harris–Dubose. The trial court also ruled that Colorado does not recognize a parental claim for loss of consortium due to a child's tortiously caused injury.

The trial court certified all of its rulings as appealable under C.R.C.P. 54(b). Although the trial court set a trial date for the Bartletts' claims against Elgin, the court noted that the Bartletts might wish to appeal its rulings dismissing the consortium claim against Elgin and dismissing all claims against Harris–Dubose. The parties stipulated to a continuance of the trial date, and the trial court then entered an order staying further proceedings pending resolution of the issues on appeal. The Bartletts appealed the trial court's rulings on all three issues: its decision not to toll the statute of limitations as to Heather's claims against Harris–Dubose, its decision not to toll the statute of limitations as to the Bartletts' derivative claims against Harris–Dubose, and its decision to dismiss the loss of filial consortium claim against Elgin and Harris–Dubose.

The court of appeals, in light of Heather's age and in the absence of a court-appointed legal representative, held that Heather was under a legal disability at the time her cause of action for medical negligence arose, thus tolling the statute of limitations as to her claims. Nevertheless, it held that the statute of limitations had run as to the Barletts' derivative claims against Harris–Dubose. In addition, the court of appeals agreed that the trial court had properly dismissed the Bartletts' claim against Elgin and Harris–Dubose

for loss of consortium. We affirm the judgment of the court of appeals.

## II.

We hold that the tolling provisions of sections 13–80–102.5(3)(d)(II) and 13–81–101 operate strictly to toll the otherwise applicable statute of limitations in favor of a minor child who does not have a court-appointed legal representative. Parents cannot revoke or suspend operation of the tolling provisions through a next friends suit filed on behalf of their child. However, we hold that the two-year statute of limitations applicable to suits against health care professionals, section 13–80–102.5(1), does operate in connection with the parents' derivative claims for damages. Finally, we decline to recognize a cause of action in parents for loss of filial consortium on account of a child's injuries.

## A.

### The Minor Child's Legal Disability

Harris–Dubose argues that the court of appeals erred in reversing the trial court's summary judgment ruling that Heather's claims were time-barred. We agree with the court of appeals.

Pursuant to section 13–80–102.5(1), actions alleging negligence against any health care professional must be "instituted within two years after the date that such action accrues ... but in no event shall an action be brought more than three years after the act or omission that gave rise to the action." Under section 13–80–108(1), 5 C.R.S. (1999), a cause of action for personal injury accrues on the date both the alleged injury and its cause are known or should have been known through the exercise of reasonable diligence.[2] The two-year statute of limitations applicable to negligence of a health care professional is tolled with regard to "a person otherwise under disability as defined in section 13–81–101, in which case the action may be maintained within the time period as provided in section 13–81–103." § 13–80–102.5(3)(d)(II).

Section 13–81–101(3) defines "person under disability" as "any person who is a minor under eighteen years of age, a mental incompetent, or a person under other legal disability and who does not have a legal guardian." A person under disability, for whom the court has not appointed a legal representative, is protected by the statute of limitations' tolling provisions. See § 13–81–103(1)(c), 5 C.R.S. (1999). The statute of limitations begins to run when the minor reaches the age of eighteen or when, if it does, a court appoints a legal representative for the minor. Court appointment of the legal representative averts the minor's legal disability for purposes of litigating the minor's rights, thereby rendering inapplicable the tolling provisions. See § 13–81–103(1)(a), 5 C.R.S. (1999). The statute defines a "legal representative" as "a guardian, conservator, personal representative, executor, or administrator *duly appointed by a court having jurisdiction of any person under disability or his estate.*" § 13–81–101(2) (emphasis added).

In determining the meaning of "person under disability," we look first to the language of the statute and give effect to its apparent legislative purpose and intent. See *Nicholas v. People,* 973 P.2d 1213, 1216 (Colo.1999); *Industrial Claim Appeals Office v. Orth,* 965 P.2d 1246, 1252 (Colo.1998). In the absence of ambiguity in the statutory language or seemingly contradictory provisions, we apply the language as written. See *Farmers Ins. Exch. v. Bill Boom, Inc.,* 961 P.2d 465, 469–70 (Colo.1998).

Here, the language of the statute is clear. The definition of "legal representative" does not include natural parents or next friends acting on behalf of a minor. See § 13–81–101(2); *see also Tenney v. Flaxer,* 727 P.2d 1079, 1084 (Colo.1986). Our reading of the statute is consistent with the court of appeals holding in *Hane ex rel. Jabalera v. Tubman,* 899 P.2d 332 (Colo.App.1995). In *Hane,* the court of appeals examined the legislative history of the definition of "person under disability." See 899 P.2d at 336–37.

---

**2.** In this case, it is undisputed that Heather Bartlett and her parents confirmed their knowledge of the injury in February 1991, when they report-

ed to a counselor at Personal Performance Consultants that Heather had been misdiagnosed.

Specifically, the General Assembly refused to redefine "person under disability" so as to include "natural guardian (parent)" along with "legal guardian". *See id.* at 337. The proposed bill would have recognized a "natural guardian" to the same extent as a "legal guardian," but the bill was criticized in the legislative process, adjusted, and enacted, in light of the argument that an irresponsible parent who had little or no interest in a child could allow a valid claim to be time-barred. *See id.*

■ The language of the applicable statutory sections reflects the General Assembly's policy choice; the statute's provisions are to operate literally for the protection of the minor. The General Assembly has not vested discretion in parents to remove or waive a minor child's legal disability by instituting a next friends suit. The statute specifically requires that a legal representative be "duly appointed by a court having jurisdiction of any person under disability or his estate." § 13–81–101(2).

The General Assembly has also identified the process by which any party in interest may petition the court for appointment of a legal representative for a minor child, so that the litigation may proceed to resolution while the child's interests are protected. Section 13–81–101.5 allows "any real party in interest, including the party against whom an *action may be brought*" to "*apply to the court* for the appointment of a legal representative." Once appointed, the rights of a person under disability "vest in said legal representative for the benefit of said person under disability." § 13–81–102, 5 C.R.S. (1999).

The trial court was not asked to appoint a legal representative for Heather. Harris–Dubose could have requested such an appointment, but instead elected to raise a statute of limitations defense. Under the circumstances, the trial court had no authority to order dismissal of the child's claims against Harris–Dubose. Thus, the statute of limitations' tolling provisions continued to protect Heather's interest in the absence of the appointment of a legal representative.

■ As the court of appeals correctly held, Colorado law prohibits parents, acting as next friends, from imputing their knowledge and actions to the minor. *See Antonopoulos v. Town of Telluride,* 187 Colo. 392, 399, 532 P.2d 346, 350 (1975). In *Antonopoulos,* this court held that "it is clear that the next friend's action or inaction in commencing the suit cannot prejudice the minor's rights." *Id.* Subsequent decisions have followed *Antonopoulos* in strictly interpreting laws designed to protect a minor's rights in similar situations. *See Rojhani v. Arenson,* 929 P.2d 23, 26 (Colo.App.1996) (concluding that parents' failure as next friends to file timely notice of minor's injury did not preclude the minor's suit because the minor was not capable of appreciating his injury and because no guardian or personal representative was appointed); *Cintron v. City of Colorado Springs,* 886 P.2d 291, 295 (Colo.App.1994) (concluding that a minor may not be charged with the parents' failure, acting as next friends, to discover the minor's injury or to provide notice thereof on the minor's behalf).

■ Harris–Dubose argues that neither *Cintron* nor *Rojhani* involved the tolling of a statute of limitations. Nevertheless, these decisions do address the underlying proposition that a parent has no responsibility or discretion to institute a next friend lawsuit that removes or waives the child's legal disability or has the effect of attributing the parent's knowledge and mistakes to the minor. "[E]ven though a parent may voluntarily undertake to aid the assertion of the child's claim by acting as a next friend, the minor will not, generally, be charged with the parents' negligence." *Cintron,* 886 P.2d at 295.

Harris–Dubose argues that the court of appeals' interpretation of the tolling statutes is inconsistent with section 13–22–101(1)(c), 5 C.R.S. (1999). Section 13–22–101(1)(c) provides that, prior to reaching age eighteen, a minor is not competent to sue or be sued "without the necessity for a guardian ad litem or someone acting in his behalf." Harris–Dubose argues that unlike the tolling statutes, there is no requirement under section 13–22–101(1)(c) for a court-appointed "legal representative." According to Harris–Dubose, this constitutes an "inherent conflict" in Colorado's statutory framework.

Statutes governing the same subject must be reconciled if possible. *See People v. Santisteven,* 868 P.2d 415, 417 (Colo. App.1993). We must read the statutory design as a whole, giving consistent, harmonious, and sensible effect to all of its parts. *See Cooper v. People,* 973 P.2d 1234, 1239 (Colo.1999). In applying these rules of statutory construction to the provisions at hand, we determine that section 13–22–101(1)(c) is not inconsistent with the tolling statutes and there is no ambiguity in the statutory provisions pertinent to this case.

Section 13–22–101(1)(c) provides that a guardian ad litem or someone acting on behalf of a minor may commence a lawsuit for that minor. This section does not address how the statute of limitations applies to such a suit; it addresses how a suit may be brought. The tolling statutes, sections 13–80–102.5(3)(d)(II) and 13–81–101, on the other hand, specifically address the statute of limitations; they toll the statute of limitations otherwise applicable if the minor does not have a court-appointed legal representative. Section 13–81–103(1)(a) provides that the statute of limitations shall run against the person under disability in the same manner, for the same period, and with the same effect as persons not under disability "if such person under disability is represented by a legal representative at the time the right accrues, or if a legal representative is appointed for such person under disability at any time after the right accrues and prior to the termination of such disability." The tolling statutes are logically and grammatically consistent with § 13–22–101(1)(c), contrary to Harris–Dubose's contentions.

Thus, the court of appeals was correct in reversing the trial court's grant of summary judgment entered in favor of Harris–Dubose against Heather's cause of action for medical negligence.

### B.

### *The Parents' Derivative Claims*

We disagree with the Bartletts' contention that their derivative damage claims are tolled along with Heather's claims. Under Colorado law, parents can maintain a derivative action for certain types of damages they incur as a result of their child's injury. *See Kinsella v. Farmers Ins. Exch.,* 826 P.2d 433, 435 (Colo.App.1992).[3] Claims for derivative damages turn upon the right of the injured person to recover and are subject to the same defenses available to the underlying claims; nonetheless, they are separate from the claims of the injured person. *See id.*

No tolling provision applies to the parents' derivative claims, however. Section 13–80–102.5(1) provides that "[e]xcept as otherwise provided in this section," actions to recover damages for medical malpractice must be brought within two years after the date the action accrues. The exceptions provided are: (1) known concealment of the act or omission; (2) the act or omission consisted of leaving an unauthorized foreign object in the body of a patient; (3) the physical injury is unknown; or (4) the action is brought by or on behalf of a minor under eight years of age or a person otherwise under disability. *See* § 13–80–102.5(3). The trial court and the court of appeals correctly found that none of these exceptions apply to the Bartletts' claims against Harris–Dubose because our General Assembly has not chosen to create an exception to the statute of limitations for actions derivative of those brought by a person under disability.

We do not agree with the Bartletts' reliance on *Korth v. American Family Ins. Co.,* 115 Wis.2d 326, 340 N.W.2d 494 (1983). In *Korth,* an injured minor and her parents filed a suit during the child's minority, but after the applicable three-year statute of limitations had expired. The Supreme Court of Wisconsin held that since the parents' claims were filed along with the minor's claims, the parents' claims were also entitled to the benefit of the statute tolling the period for filing the minor's claims. *See Korth,* 340 N.W.2d at 497. The Supreme Court of Wisconsin

---

**3.** Such claims for damages may include only economic damages, such as reimbursement for medical and other expenses incurred because of the child's injuries, loss of household and similar services that the injured child would have rendered during his or her minority, and loss of the child's earning capacity during minority. *See Kinsella,* 826 P.2d at 435.

relied on prior Wisconsin case-law that required the parental cause of action for loss of society and companionship to be brought in the same action as that of the minor's claim for personal injuries. *See id.; see also Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495, 501 (1975).[4]

No such joinder requirement exists under Colorado law. While the Bartletts' derivative claims arise out of Heather's injury, Colorado law does not require them to pursue these claims in connection with their daughter's action.[5] A vast majority of federal and state courts agree that the minor's disability does not toll the statute of limitations applicable to the parents' separate claims, although such claims are derivative in nature. *See, e.g., Garay v. Overholtzer,* 332 Md. 339, 631 A.2d 429, 438 (1993) (citing a list of cases and stating that "our view ... is in accord with virtually every court that has addressed this issue").

The Bartletts sought recovery of medical expenses incurred by them because of Heather's injury in a timely action against Elgin, but not against Harris–Dubose. The court of appeals and the trial court did not err in ruling that the statute of limitations barred the Bartletts' derivative claims against Harris–Dubose.

## C.

### *Loss of Filial Consortium*

The Bartletts argue on appeal that their claim against Elgin and Harris–Dubose for loss of consortium with Heather is viable under Colorado law. The trial court and the court of appeals disagreed. Although the Bartletts' consortium claim against Harris–Dubose is mooted by the statute of limitations having run against her, the Bartletts brought their consortium claim against Elgin within the statutory period. Therefore, the consortium issue is ripe for our review as to Elgin because he has not been dismissed from the lawsuit and the Bartletts' derivative claims against him are still pending. The trial court continued trial thereon pending resolution of its C.R.C.P. 54(b) certification on appeal.

We thus proceed to address whether deprivation of filial consortium is an available cause of action under Colorado common law; we agree with the trial court and the court of appeals that it is not. We first observe that federal district court decisions predicting Colorado law in this regard are contradictory. *Compare Hancey v. United States,* 967 F.Supp. 443 (D.Colo.1997) (recognizing parental claim for tortious loss of his or her child's consortium under Colorado law) *with Hill v. United States,* 854 F.Supp. 727 (D.Colo.1994) (refusing to recognize parental claim for tortious loss of consortium under Colorado law).[6] The *Hill* decision was decided correctly under Colorado law.

The Bartletts argue that in *Miller v. Subia,* the Colorado Court of Appeals recognized, by implication, a loss of consortium claim for injuries to a child. 514 P.2d 79 (Colo.App.1973) (not selected for official publication).[7] In *Miller,* the court of appeals

4. In determining that the statute tolling limitations for a minor's action during the minority of the child also applied to a claim by a parent for medical expenses arising out of the injury to the child, the court in *Korth* reasoned, "Although *Shockley* apparently does not require the joinder of the parent's claim for medical expenses with the child's claim, as a practical matter the parent's claim for medical expenses should be joined with the parent's claim for loss of society." 340 N.W.2d at 496.

5. C.R.C.P. 19 requires joinder of a party if disposition of the action in the party's absence may: "(A) As a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his

claimed interest." We observe that if a court-appointed legal representative had brought the suit on Heather's behalf, there would have been no bar to the parents filing their derivative claims in the minor's lawsuit, so long as the parents' derivative claims were filed within the applicable statutory period.

6. Consortium is defined as "the benefits that one person ... is entitled to receive from another, including companionship, cooperation, affection, aid and (between spouses) sexual relations." *Black's Law Dictionary* 304 (7th ed.1999).

7. We note that opinions that are not selected for official publication are of no precedential value. *See* C.A.R. 35(f) ("Those opinions selected for official publication shall be followed as prece-

stated, "[a] review of the record convinces us that there was inadequate evidence to support a recovery for [the parent] on loss of companionship, services, and earnings, and therefore, it was proper not to instruct the jury on these theories." 514 P.2d at 80. The court of appeals, however, did not address the substance of the issue when it upheld the trial court's denial of the claim on procedural grounds.

We have previously held that the common law of Colorado does not recognize a child's right to consortium damages for loss of an injured parent's society and companionship. *See Lee v. Colorado Dep't of Health,* 718 P.2d 221 (Colo.1986). In *Lee,* we reasoned that "[t]he legislature, in our view, is in the best position to weigh [the] factors and to make the appropriate decision regarding the cognizability of a child's claim for the loss of companionship and support of an injured parent." 718 P.2d at 234. We adopt this reasoning as equally applicable to a parent's filial consortium claim for injury to a child.

The common law takes into account the interaction between the courts and the legislature in the course of a subject matter's legal development, interpretation, and instruction. We have previously deferred to the General Assembly in the matter of consortium claims; it traditionally has taken the lead in deciding the circumstances under which such a claim is to be recognized. For instance, in 1961, the General Assembly enacted section 14–2–209, 5 C.R.S. (1999), regarding claims for loss of spousal consortium. Section 14–2–209 states that, in an action for tort by a married woman, a woman "shall have the same right to recover for loss of consortium of her husband as is afforded husbands in like actions." The enactment of this statute changed the common law's failure to recognize a wife's right to sue for loss of consortium resulting from her husband's injuries. *See Crouch v. West,* 29 Colo.App. 72, 74, 477 P.2d 805, 806 (1970). Three Colorado decisions had refused to recognize such

a claim in the absence of legislative action. *See id.* In *Franzen v. Zimmerman,* we said:

This denial of right of action in such instances ... is based upon different theories and methods of reasoning, but primarily upon the ground that as no such right existed in favor of married women under the common law, it now may not be successfully claimed by them in the absence of legislative grant.

127 Colo. 381, 383-84, 256 P.2d 897 (1953).

The General Assembly has authorized claims for loss of consortium in wrongful death cases but has not yet acted to include injury cases. *See* § 13–21–203, 5 C.R.S. (1999). In 1989, the General Assembly amended the Colorado Wrongful Death Act, expanding the categories of damages recoverable in wrongful death actions. *See* ch. 13, art. 21, § 203, 1989 Colo. Sess. Laws 752. The amended statute now expressly authorizes the recovery of damages for "grief, loss of companionship, pain and suffering, and emotional stress, to the surviving parties who may be entitled to sue." § 13–21–203.

In declining in *Lee* to recognize a child's claim for loss of parental consortium as a matter of Colorado common law, we relied on several factors that are relevant to the parallel situation presented here by the Bartletts' claim. Specifically, we were concerned about the efficacy of monetary compensation as a substitute for companionship, the intangible character of the loss, the difficulty of measuring damages to offset the loss, and the risk of overlapping and multiple awards for the different interests of those affected by the injury. *See Lee,* 718 P.2d at 233–34. Other courts have added a concern about the cost and availability of insurance to cover such damages. *See, e.g., Siciliano v. Capitol City Shows, Inc.,* 124 N.H. 719, 475 A.2d 19, 22 (1984); *Boucher v. Dixie Med. Ctr.,* 850 P.2d 1179, 1185 (Utah 1992).

Thus, we have determined that rational development of standards and limitations regarding consortium claims is a matter best addressed by the legislative branch.[8]

dent by the trial judges of the state of Colorado.''); *see also Schafer v. Hoffman,* 831 P.2d 897, 901, n. 8 (Colo.1992).

8. Some of the concerns that may exist in recognizing a cause of action for loss of consortium include: the extent of potential damages; what actions may limit or bar recovery; the applicabil-

We agree in this respect with the reasoning of the Supreme Court of Utah:

> However admirable in the name of justice it is to attempt to compensate everyone who suffers at the hand of a tortfeasor, boundaries around liability must be drawn.... The legislature is peculiarly equipped to draw the lines. We are not.

*Boucher*, 850 P.2d at 1186 (quoting *Hackford v. Utah Power & Light Co.*, 740 P.2d 1281, 1289 (Utah 1987)).

The majority of courts examining the question have declined to recognize a claim for loss of filial consortium.[9] Like us, many of these courts articulate deference to the legislature in this arena.[10] Jurisdictions that have recognized a right of action for deprivation of filial consortium generally have acted by statute or have reached this result through statutory construction.[11]

The Bartletts argue that it is illogical for the legislature to recognize a claim for loss of consortium in the wrongful death context and to deny such a claim for injury caused to a child. We disagree. The legislature designed its step as a limited and rational one.[12] Legislative decisions regarding consortium damages for wrongful death have

a circumscribed context and history. *See Sizemore v. Smock*, 430 Mich. 283, 422 N.W.2d 666, 672–73 (1988). The Supreme Court of Michigan, for example, has noted the differentiation between death and injury in the context of a child's loss of a parent's consortium:

> [W]here the parent dies, compensation for loss of parental care and services can be recovered only through a wrongful death action. Whether or not this compensation encompasses recovery for the child's loss of society and companionship in addition to more pecuniary items such as lost wages from which support would have been furnished, the availability of some reparation for disadvantage to the child and to the victim's family furnishes a sufficient basis for allowing the child to recover for lost society and companionship in the case of a parent's death but not in the case of parental injury.

*Id.* at 673.

We recognize that other courts have viewed the opportunity for common law development of consortium claims by the judiciary differently. *See, e.g., Hancey*, 967

---

ity of the statute of limitations and the tolling statutes; whether punitive damages should be allowed; and what individuals stand in loco parentis so that they may sue for loss of consortium.

9. *See, e.g., Smith v. Richardson*, 277 Ala. 389, 171 So.2d 96 (1965); *Baxter v. Superior Court*, 19 Cal.3d 461, 138 Cal.Rptr. 315, 563 P.2d 871 (1977); *Wheeler v. Drummond*, 1990 WL 58253 (Del.Super.Ct. Apr.17, 1990); *Dralle v. Ruder*, 124 Ill.2d 61, 124 Ill.Dec. 389, 529 N.E.2d 209 (1988); *Michaels v. Nemethvargo*, 82 Md.App. 294, 571 A.2d 850 (1990); *Sizemore v. Smock*, 430 Mich. 283, 422 N.W.2d 666 (1988); *Butler v. Chrestman*, 264 So.2d 812 (Miss.1972); *Powell v. American Motors Corp.*, 834 S.W.2d 184 (Mo. 1992); *Heidt v. Heidt*, 108 Nev. 1009, 842 P.2d 723 (1992); *Siciliano*, 124 N.H. 719, 475 A.2d 19; *Wilson v. Galt*, 100 N.M. 227, 668 P.2d 1104 (N.M.Ct.App.1983); *Gilbert v. Stanton Brewery*, 295 N.Y. 270, 67 N.E.2d 155 (1946); *Michigan Sanitarium & Benevolent Ass'n v. Neal*, 194 N.C. 401, 139 S.E. 841 (1927); *Beerbower v. Oregon Health Sciences Univ.*, 85 Or.App. 330, 736 P.2d 596 (1987); *Brower v. City of Philadelphia*, 124 Pa.Cmwlth. 586, 557 A.2d 48 (1989); *Boucher*, 850 P.2d 1179; *Gates v. Richardson*, 719 P.2d 193 (Wyo.1986).

10. *See, e.g., Sizemore*, 422 N.W.2d at 674 n. 27; *Powell v. American Motors Corp.*, 834 S.W.2d 184

(Mo.1992); *McCaskill v. Philadelphia Housing Auth.*, 419 Pa.Super. 313, 615 A.2d 382, 386 (1982); *Boucher*, 850 P.2d at 1186.

11. *See* Idaho Code § 5–310; La. Civ.Code Ann. art. 2315; Mass. Gen. Laws ch. 231 § 85X; R.I. Gen. Laws § 9–1–41; Wash. Rev.Code § 4.24.010; *Gillispie v. Beta Constr. Co.*, 842 P.2d 1272 (Alaska 1992) (Alaska Stat. § 09.15.010 creates separate parental cause of action that includes right to recover loss of society damages); *Madison v. Colby*, 348 N.W.2d 202 (Iowa 1984) (recognition of claim of loss of filial consortium based on Ia. R. Civ. P. 8). Jurisdictions that have judicially adopted the claim view the adoption of consortium claims as within the responsibility of judicial authority. *See, e.g., Reben v. Ely*, 146 Ariz. 309, 705 P.2d 1360, 1361–62 (Ariz.Ct.App.1985); *Shockley v. Prier*, 66 Wis.2d 394, 225 N.W.2d 495, 497 (1975).

12. In enacting Colorado's Wrongful Death Act, the legislature characterized loss of companionship as a noneconomic loss or injury and determined that recovery for such a loss shall be limited to $250,000, unless the action causing the death constitutes a felonious killing. *See* § 13–21–203.

F.Supp. at 445. The law in our state addresses recovery of damages through a legal representative on behalf of the child for her injury and, as the Bartletts claimed, reimbursement to the parents for medical expenses incurred as a result of that injury. The techniques and measures for quantifying these losses are tangible and have the benefit of practice and experience. Our choice is not to attempt the articulation of standards by which to measure a parental loss of companionship occasioned by a child's injury. The common law takes incremental steps through the exercise of judgment based upon practice and experience. In *Lee*, we exercised our judgment that the legislative process is best suited to reach decisions about the intangibles of consortium loss and the appropriate standards and limitations that should be applicable thereto. We have established a common law policy of deference in this regard and have been presented with no compelling reason to disrupt this precedent.

The trial court and the court of appeals did not err. We decline to recognize a Colorado common law right in parents to seek damages for loss of consortium with their injured child. Because the Bartletts brought their derivative claims against Elgin within the statutory period, because trial of them was stayed, and because Elgin is still a party-defendant in the lawsuit, the Bartletts' claims against Elgin for medical expenses they incurred or will incur on Heather's behalf remain in the case.

### III.

Accordingly, we affirm the judgment of the court of appeals and return this case to the court of appeals for remand to the trial court for further proceedings consistent with this opinion.